

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
01/31/2008

| IN RE: | § | |
|---|---|---|
| ERNEST FRANK GOUGE | § | CASE NO: 07-34839 |
| Debtor(s) | § | |
| | § | CHAPTER 7 |

## MEMORANDUM OPINION
## CONCERNING ORDER SUSTAINING OBJECTION TO CLAIM OF EXEMPTION

    Creditor Brickland Homes, Inc., was the beneficiary of a turnover order issued by a Texas state court for part of the proceeds from a lawsuit that Debtor had filed against Reliant. When the lawsuit settled and Debtor received his part of the settlement proceeds, Debtor used the proceeds to fund an annuity rather than paying part of the proceeds over to Brickland.  Brickland objects to the Debtor's claimed exemption of the annuity.  By separate order issued this date, the objection is sustained to the extent of the judgment owed to Brickland.

### I.  FINDINGS OF FACT

    On January 29, 2008, the Court held a hearing on the objection to exemption (docket # 15) filed by Brickland Homes, Inc. ("Brickland").  Ernest Gouge ("Debtor") appeared in court, but did not testify.  Evidence consists of the transcript of Debtor's Rule 2004 examination and Brickland's Exhibits 1 through 28 (which include excerpts from the deposition of Paul Simpson, Debtor's attorney in state court litigation).  Following that hearing, the Court makes the following findings of fact consisting of a chronology, followed by analysis of the chronology.

A.    CHRONOLOGY

| DATE | EVENT | REFERENCE |
|---|---|---|
| 2002 | "Reliant Lawsuit" filed.  (Debtor and others sued Reliant Energy Services).  Debtor's contingent fee counsel in Reliant suit was McGinnis, Lockridge, & Kilgore ("MLK") | Cause # 2002-08521 151st Judicial District Court |
| 2003 | "Brickland Lawsuit" filed.  Suit by Brickland Homes against Debtor.  Debtor not represented by counsel. | Cause # 2003-09769 61st Judicial District Court |
| 3/29/04 | Brickland obtained default judgment against Debtor in Brickland Lawsuit. | Exhibit 1 |
| 4/2004 | Brickland attempted to intervene in Reliant Lawsuit, essentially trying to seize any proceeds due Debtor. | Exhibit 10 |
| 10/29/04 | Brickland obtained turnover order requiring Debtor to execute an assignment of sufficient proceeds of | Exhibit 2 |

| DATE | EVENT | REFERENCE |
|---|---|---|
|  | Reliant Lawsuit to satisfy Brickland's default judgment against Debtor. |  |
| 11/1/04 | Letter from Brickland's counsel asking Debtor to execute assignment of Reliant suit proceeds to effect turnover.  No persuasive evidence was introduced concerning whether MLK received this communication. | Exhibit 14 |
| 11/12/04 | Debtor's response to 11/1 letter from Brickland; the letter ignores demand for assignment; it offers to settle $86,000 judgment for $25,000.  There is no evidence in the record that there was any response to this offer or any follow-up on the request for assignment of suit proceeds. | Exhibit 15 |
| 9/05 | Debtor had conference with bankruptcy counsel. | Exhibit 7 |
| 7/11/06 | Debtor underwent surgery, suffered complications, and spent some time in a medically-induced coma. | Debtor's deposition |
| 2/20/07 | Rule 11 agreement (documented some time later) to settle the Reliant Lawsuit for $500,000; Debtor participated in settlement discussions. | Exhibit 16, page 25, lines 16 – 22 Exhibit 23 |
| 2/23/07 | • Reliant paid settlement proceeds to MLK.<br>• MLK obtained Cashier's check to transmit settlement proceeds to Debtor. | • Exhibit 23<br>• Exhibit 3 |
| March or April 2007 | Debtor conferred with bankruptcy counsel. | Exhibit 24 |
| 3/16/07 | Debtor inquired of MLK " whether an annuity would be subject to … a creditor getting an annuity or what the status of an annuity was."  Debtor's counsel for Reliant case replied that he did not know. | Exhibit 20. Transcript page 78 line 1 through page 79 line 17. |
| 3/20/07 | Brickland counsel wrote to MLK seeking information on Reliant Lawsuit settlement.  Copy sent by fax to wrong fax number. | Exhibit 4 and letter from Brickland counsel dated 1/30/08 |
| 3/20/07 | MLK and Debtor exchange emails about settlement; Debtor had no difficulty understanding and communicating. | Exhibit 17 |
| 3/26/07 | MLK counsel has no record of receipt of fax copy of letter on 3/20.  MLK acknowledges receipt of that letter by mail on 3/26. | Exhibit 6. |
| 3/28/07 | • MLK responded to Brickland counsel that (1) MLK no longer represented Debtor, and (2) settlement is confidential. | • Exhibit 6 |

| DATE | EVENT | REFERENCE |
|---|---|---|
|  | • MLK sent letter to Debtor with information about bankruptcy counsel. | • Exhibit 7 |
| 3/28/07 | Debtor applied to purchase annuity and paid the premium with his entire share of the Reliant Lawsuit settlement proceeds, $300,000. The annuity is American National Insurance Company Policy Number 14544724 (the "Annuity"). | Exhibit 5 |
| 4/29/07 | • Brickland sought contempt citation against Debtor for failure to turn over Reliant Lawsuit settlement proceeds as required by turnover order.<br>• Hearing set for 7/29/07. | • Exhibit 25<br><br><br><br><br>• Exhibit 26 |
| 7/24/07 | Debtor filed bankruptcy petition & filed suggestion of bankruptcy in Brickland Lawsuit. | Case doc. #1<br>Exhibit # 27 |

B.      ANALYSIS OF FACT ALLEGATIONS OF THE PLEADINGS

      1.      Brickland's Objection to Exemption

Brickland's objection is focused on a constructive trust theory. That is, Brickland argues that the annuity is not exempt because the funds used to purchase it were held by Debtor in constructive trust for Brickland at the time of the purchase. Not until it's pretrial memorandum of authorities (docket # 35) does Brickland argue that Texas Insurance Code § 1108.053 disqualifies the exempt status of the annuity. Nevertheless, that issue is implied and subsumed within the facts and transactions alleged in the objection to exemption. And Debtor's counsel clearly tried and argued that issue at the hearing. Therefore the Court considers both arguments at issue. That is, the Court considers the issues in this contested matter to be (i) whether application of Texas Insurance Code § 1108.053 denies the Annuity an exemption from creditors' claims, and (ii) if the Annuity was purchased in fraud of Brickland, whether the Annuity is held in constructive trust.

      2.      Debtor's Response to the Objection to Exemption

Debtor did not file a memorandum of authorities as required by the Court's case management order (docket # 28, paragraph 3.) Nevertheless, Debtor's counsel's closing argument clearly demonstrates that Debtor defended the objection on the same two legal questions. Debtor's defense to Brickland's first legal theory is that the principles of constructive trust do not apply. Debtor's defense to Brickland's second legal theory is that Debtor was ill and lost any memory of the Brickland judgment and turnover order. Therefore, Debtor's counsel argues, Debtor could not have acted to hinder, defraud, or delay creditors or in fraud of creditors' rights.

3. Debtor's Illness

Debtor did not testify and did not offer any evidence at the hearing. The only evidence in the record regarding Debtor's illness is the transcript of Debtor's Oral Deposition taken August 29, 2007.[1] The testimony about Debtor's illness is mostly in response to questions about Debtor's alleged malpractice action that is listed as an asset in his bankruptcy case.

In his deposition, Debtor testified that he had "spots" on his lung, and that he underwent a medical procedure July 11, 2006, to remove part of his lung. Debtor testified that the physician failed properly to suture the lung, causing loss of blood into the chest cavity and a collapse of both lungs. This allegedly caused Debtor to lapse into a coma for some unspecified period of time. The evidence does not give a date when the coma terminated or any information concerning Debtor's current conditions or limitations. Debtor used a cannula in the courtroom, and the deposition contains some reference to Debtor using a wheelchair in the March 2007 timeframe.

4. Debtor's Memory

Debtor makes several references to loss of memory. But there is no medical evidence concerning the extent of memory loss, if any. There is also no evidence in the record of the dates that Debtor was in a coma[2] and whether memory has been partially or wholly restored (or when that restoration might have happened, if it did). In short, Debtor's testimony makes vague statements about a coma and about memory loss, but those statements are not convincing. There are several factors that imply less memory loss than Debtor alleges.

First, Debtor's counsel in the Reliant Lawsuit testified in their Rule 2004 examination that they conferred and exchanged emails with Debtor in February 2007, when the Reliant Lawsuit was settled. They believed that Debtor understood the proceedings and issues and participated, apparently as a client normally would.[3]

> Q: Did you have to negotiate through someone acting on his behalf, or was he able to participate in the conversations?
> A: We talked with Mr. Gouge.[4]

Second, Debtor's deposition indicates that he clearly remembers a number of dates. He remembered the date of his surgery, and he remembered events that predate the surgery as well as events subsequent to the surgery.[5] He remembered the details about land he owns in Mexico, the amount offered for purchase of that land, and was facile with computations of the number of square meters and price per square meter.[6] He remembered the details about the nightclub he

---

[1] The transcript of the hearing refers to the examination as a FRBP 2004 examination, but the transcript labels it a deposition.
[2] The most explicit information about the coma is the testimony of Debtor's attorney, Exhibit 16, Simpson transcript, page 28 lines 10 through 12 indicating that Debtor had been in an induced coma "for months".
[3] Exhibit 16, transcript page 25, lines 16 through 24.
[4] Exhibit 16, transcript page 28, lines 13 through 16.
[5] Debtor's deposition, page 64, lines 3 through 4.
[6] Debtor's deposition, page 39 line 12 through page 43 line 9.

formerly operated, the names of the performers (some famous and some less famous), and the CD's that they gave him.[7] There are any number of other examples in the deposition of specific and detailed knowledge about personal property, when it was acquired and how, *etc.*

Third, Debtor seemed to remember clearly the details about his consultation with his bankruptcy attorney.[8]

    5.    Debtor's Knowledge of the Brickland Judgment and Turnover Order on March 28, 2007

The most important question about Debtor's memory is whether he remembered Brickland's judgment and turnover order when he received the proceeds from settlement of the Reliant Lawsuit. Debtor's direct testimony on this issue is less than compelling:

> Q: At what point did you become aware of that? [The Brickland judgment.]
> A: After the money had been paid, and I don't know - - maybe a month or longer. I was told that Brickland - - or rather the law firm representing Brickland was inquiring about it. Now, then I became aware…
> …
> Then I got the background of what happened.

Debtor received the money about February 23, 2007. He knew about the Brickland judgment and turnover order about March 23. He bought the annuity March 28. Debtor's statements about loss of memory are not convincing. Debtor appears to have been functioning with normal memory and comprehension in February and March, 2007. The Court concludes that it is more probable than not that Debtor knew about the Brickland judgment and turnover order on March 28, 2007.

    6.    Debtor's Intent in Purchasing the Annuity

The first evidence of Debtor's consultation with a bankruptcy attorney is September, 2005. That consultation was about a year after Debtor unsuccessfully proposed to settle the Brickland judgment for a payment of about 30%. MLK's cryptic letter suggests that MLK knew about that consultation, because their letter reminded Debtor of the name and contact information for that attorney.[9]

As noted in the chronology, on March 16, almost 2 weeks before buying the annuity, Debtor attempted to get advice from MLK about whether creditors could reach annuity proceeds. Debtor contacted his current bankruptcy counsel about the same time.

Debtor's story about the circumstances leading to his purchase of the annuity suggests a serendipitous chain of events. He testified[10] that he contacted an insurance agent in Philadelphia

---

[7] Debtor's deposition, page 57 line 2 through line 25.
[8] Debtor's deposition, page 69, line 16 through page 70 line 3.
[9] Exhibit 7.
[10] Debtor's deposition, beginning on page 27, line 12.

for information about medicare supplement insurance. The agent mentioned other products that he handled, one of which was an annuity. Debtor asked the agent to tell him more, and based on that conversation decided that an annuity was a good investment. Debtor testified that his objective in purchasing the annuity was to acquire a guaranteed lifetime income for his spouse.

While the investment makes sense, the story is not convincing. The Court is convinced by a preponderance of the evidence that Debtor learned in mid-March that Brickland was likely to enforce its judgment and order for turnover, that Debtor sought advice about exemptions, and that Debtor made an effort to get his "ducks in a row" before confronting Brickland.[11] The Court is convinced by a preponderance of the evidence that Debtor intended to avoid the order for turnover of the Reliant Lawsuit settlement proceeds by acquiring an annuity.

## II.   CONCLUSIONS OF LAW

A.   Annuity Purchased in Fraud of Creditors Is Not Exempt from Creditors' Claims

Annuity benefits are exempt property under section 1108.051 of the Texas Insurance Code. But the exemption does not apply to (1) a premium payment made in fraud of a creditor, subject to the applicable statute of limitations for recovering the payment; or (2) a debt of the insured or beneficiary secured by a pledge of the insurance policy or the proceeds of the policy. V.T.C.A., Insurance Code § 1108.053.

To date no state court has examined section 1108.051 or section 1108.053. *In re Soza*, 358 B.R. 903, 907 (S.D. Tex. 2006).

> However, the predecessor to these sections, Insurance Code article 21.22, contained the same annuity exemption found today in section 1108.051, as well as the same "in fraud of creditors" exception that is found in section 1108.053. Controlling Texas case law establishes that article 21.22 does not apply "when used as a shield to fraud." *Sun Life Assurance Co. of Canada v. Dunn*, 134 F.Supp.2d 827, 836 (S.D. Tex.2001) (citing *Marineau v. Gen. Am. Life Ins. Co*., 898 S.W.2d 397, 402 (Tex.App.-Fort Worth 1995, no writ)).
> *Id.*

Fraud refers to an act, omission, or concealment in breach of a legal duty, trust, or confidence justly imposed, when the breach causes injury to another. *Soza*, 358 B.R. at 911 (citation omitted). Nothing in the sections suggests that something less than intent is sufficient to satisfy the "in fraud of creditors" condition to the exemption exception. *Id.*, at 907.

Common law fraud claims have a four-year statute of limitations. See *Williams v. Khalaf*, 802 S.W.2d 651, 653 (Tex. 1990) (op. on reh'g).

---

[11] Debtor's deposition, page 37 lines 12-13.

Debtor received the settlement proceeds from the Reliant Lawsuit on February 23, 2007. MLK received Brickland's letter demanding information on the settlement on March 26, 2007. Debtor applied and paid for the annuity on the heels of that letter. Having already rejected the Debtor's alleged memory loss with respect to the Brickland judgment and turnover order, the Court has concluded Debtor intended to avoid the order for turnover of the Reliant Lawsuit settlement proceeds by acquiring an annuity. In avoiding the turnover order, Debtor has deprived Brickland of its share of the proceeds. The Court concludes that the Annuity was purchased in fraud of Brickland.

1. Annuity Partially Nonexempt

The Court has been unable to find any cases dealing with the situation where the annuity purchased is in excess of the amount owed to the defrauded creditor. Annuities are generally exempt, and exemptions should be liberally construed. *In re Baldowski*, 191 B.R. 102, 105 (Bankr. N.D. Tex. 1996). The exemption does not apply to a payments made in fraud of a creditor or a debt secured by a pledge of the policy or its proceeds. Texas Insurance Code § 1108.053. Thus any portion of the annuity that is not made in fraud of creditors should be exempt, *i.e.* unaffected by § 1108.053.

Brickland's default judgment represents less than one-third of the $300,000 annuity. This portion of the annuity is tainted, but the Court sees no reason to deny any remaining portion of the Annuity as exempt. The Court concludes that 28.67%[12] of the annuity is nonexempt property due to Debtor's fraud.

B.   Debtor Holds Annuity in Constructive Trust for Brickland

Under Texas law, a constructive trust is an equitable remedy available to a party that has been defrauded. *Burkhart Grob Luft und Raumfahrt GmbH & Co. KG v. E-Systems, Inc.*, 257 F.3d 461, 469 (5th Cir. 2001). A constructive trust is a relationship with respect to property, subjecting the person by whom the title to the property is held to an equitable duty to convey it to another, on the ground that his acquisition or retention of the property is wrongful and that he would be unjustly enriched if he were permitted to retain the property. *Baker Botts, L.L.P. v. Cailloux*, 224 S.W.3d 723 (Tex. App. San Antonio 2007), petition for review filed, (Apr. 17, 2007). It is not essential for the application of the constructive trust doctrine that a fiduciary relationship exist between the wrongdoer and the beneficial owner if there is actual fraud. *Meadows v. Bierschwale*, 516 S.W.2d 125, 129 (Tex. 1974).

> Where a person wrongfully disposes of property of another knowing that the disposition is wrongful and acquires in exchange other property, the other is entitled at his option to enforce either
> (a) a constructive trust of the property so acquired, or
> (b) an equitable lien upon it to secure his claim for reimbursement from the wrongdoer.
> *Id.* (citation omitted).

---

[12] $86,000 (Final Judgment) / $300,000 (Annuity Purchase Price) x 100% = 28.67%

A party seeking imposition of a constructive trust must strictly prove: (1) breach of a special trust, fiduciary relationship, or actual fraud; (2) unjust enrichment of the wrongdoer; and (3) tracing to an identifiable res. *Flournoy v. Wilz*, 201 S.W.3d 833 (Tex. App. Waco 2006), reh'g overruled, (Aug. 29, 2006) and petition for review filed, (Oct. 17, 2006).

1. Actual Fraud

The Court has concluded, as discussed above, the Debtor acted in fraud.

2. Unjust Enrichment

Texas Law prevents the Debtor from claiming an exemption in an annuity that was purchased in fraud of creditors.  Brickland had obtained a turnover order requiring Debtor to execute assignment of the Reliant Lawsuit proceeds to Brickland.  Debtor attempted to thwart turnover through the conversion of the proceeds to an annuity.  Debtor held the proceeds, and now the annuity, in defiance of court order that stripped Debtor of the right to hold the proceeds.  Debtor has unjustly enriched himself at Brickland's expense.

3. Tracing

The annuity was purchased with the proceeds of the Reliant Lawsuit.

The scope and application of a constructive trust is generally left to the discretion of the court imposing same.  Sauceda v. Kerlin, 164 S.W.3d 892 (Tex. App. Corpus Christi 2005), reh'g overruled, (July 7, 2005).  The Court concludes that Brickland has proven the elements for a constructive trust, and Debtor's conduct warrants the imposition of a constructive trust.  Debtor has an equitable duty to convey title to the nonexempt portion of the Annuity to Brickland.

### III.   ATTORNEYS' FEES AND COSTS

Brickland's motion asks for attorneys fees and costs.  No evidence was introduced of those elements and Brickland has not alluded to any legal authority by which they are entitled to same.  Therefore, attorneys fees and costs are denied.

### IV.   CONCLUSION

By separated order issued this day, Brickland's objection to Debtor's claimed exemption of the Annuity is granted in part.

SIGNED 01/30/2008.

_____
Wesley W. Steen
United States Bankruptcy Judge